STEINBERG, Associate Judge:
The appellant, Vietnam-era veteran Charles W. Sweat, appeals from a January 15,1991, decision of the Board of Veterans’ Appeals (BVA or Board) denying entitlement to service connection for an acquired psychiatric disorder. Charles W. Sweat, BVA 91-01428 (Jan. 15, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance, asserting that the Board properly concluded that there was no new and material evidence to reopen the veteran’s claims and, therefore, denied reopening. Although the Court finds the Board’s decision ambiguous as to whether or not the Board reopened the veteran’s claim and considered the merits of that claim, the Court holds that there was no new and material evidence to justify reopening the veteran’s claim. Since the claim should not have been reopened, any error in the Board’s analysis of the merits of that claim was harmless. The Court thus will affirm the BVA decision.
I. BACKGROUND
The veteran served on active duty in the U.S. Marine Corps from February 12, 1969 to April 11, 1969. R. at 52. At the time of his induction examination, the only defect noted was “defective vision”. R. at 42. A handwritten entry on his induction examination report appears to list his weight as 306 pounds, although that notation is not entirely clear. Ibid. In a space on that form where the subject’s build may be described as “slender”, “medium”, “heavy”, or “obese”, the examiner marked the box under “heavy”. Ibid.
On March 27, 1969, the veteran was referred to a Marine “Aptitude Board” for evaluation “on the basis of illiteracy”. R. at 35. On the referral sheet, it was stated that no mental defects had been found. Ibid. On April 11, 1969, pursuant to the Aptitude Board’s recommendation, the veteran was given an honorable discharge on the basis of unsuitability because he was *69 unable, despite sincere efforts, to complete the training program. R. at 29, 44. At his separation examination on April 4, 1969, the veteran’s weight was reported to be 180 pounds and his build was described as “medium”. R. at 33. No defects were noted.
The veteran was hospitalized in a Veterans’ Administration (now Department of Veterans Affairs) (VA) hospital from June 13 to July 12, 1971, for complaints of chest pain and vague psychiatric complaints. R. at 49. He was diagnosed with “Probable inadequate personality and borderline intelligence”. Ibid. In a September 1971 rating decision, a VA regional office (RO) denied service connection for that disorder as being a “constitutional or developmental abnormality” and, hence, not a disability within the meaning of the law. R. at 53; see 38 C.F.R. § 4.127 (1991) (mental deficiency and personality disorders not considered disabilities for purposes of VA benefits).
In 1974, the veteran filed with the RO a claim for service connection for a psychiatric disorder, asserting that he had suffered a nervous breakdown while in the Marine Corps. R. 57. In support of his claim, he submitted a January 12,1973, letter from a private physician who had treated the veteran for psychiatric problems. The physician stated that the veteran suffered from “chronic undifferentiated schizophrenia” and that in July 1971, he had diagnosed the veteran with “probable chronic undifferentiated schizophrenia”. R. at 55. In an August 1, 1975, decision, the RO denied service connection for schizophrenia, and also concluded that the veteran did not meet the requirements for VA non-service-connected pension. R. at 66.
In 1977, the veteran sought to reopen his claim for service connection for a psychiatric disorder. In a Statement in Support of Claim, the veteran stated that during his service, his sergeant had not let him eat for two weeks and that he had lost 70 pounds in those two weeks. R. at 68. He stated that a VA physician had told him that such sudden and extreme weight loss could have caused a nervous condition. Ibid. A VA hospitalization record from September 7-8, 1977, states, under “Pertinent History, Chief Complaint, and Condition on Admission” that the veteran’s weight had gone from 240 to 170 pounds in the first two weeks of his service and that he had subsequently had a nervous breakdown leading to his discharge. R. at 70. The VA examiner diagnosed obesity and an unspecified “nervous disorder”. Ibid. The RO informed the veteran that that evidence was not new and material (so as to justify reopening his previously and finally denied claim, see 38 U.S.C. § 5108 (formerly § 3008)) because it did not demonstrate the existence of a nervous condition in service or within one year after separation. R. at 72.
The veteran sought to reopen his claim at the VARO in 1981. R. at 73. A June 16, 1981, VA hospital record reflecting hospitalization from December 4, 1980, to May 7, 1981, indicated a diagnosis of, inter alia, “Post[-]traumatic stress disorder [PTSD], chronic or delayed, secondary to Marine recruit training”. R. at 78. The examiner stated that the veteran blamed all of his psychiatric problems on his Marine Corps experience, and that he had stated that his drill sergeant had forced a massive weight loss by means of starving, choking, beating, secluding, and degrading him. R. at 79.
The veteran submitted lay statements from two persons who had known him prior to service, stating that he had weighed 300 or more pounds in 1968 and 1969. R. at 97, 104. He also submitted lay statements from other persons, stating that he had not had any mental problems prior to service. R. at 98, 105, 106. In a January 1982 Statement in Support of Claim, the veteran stated that his sergeant in the Marine Corps had forced him to lose 126 pounds in 57 days by “keeping [him] isolated, practically starving [him], giving [him] liquid soap, punching [him], kicking [him],” and verbally abusing him. R. at 108. He stated that he had had blackouts due to this physical and emotional trauma, and that his sergeant had refused to let him go to sick call. Ibid. The RO again denied the claim in a January 1982 decision. R. at 110.
*70 After the RO certified the veteran’s claim to the BVA, the Board in July 1983 requested an advisory opinion from the VA Chief Medical Director as to the correct diagnosis and time of onset of the veteran’s psychiatric disorder, if any. R. at 132. In response, the Director of the VA Mental Health and Behavioral Sciences Service replied that the veteran did not have an acquired psychiatric disorder, and that the June 16, 1981, diagnosis of PTSD was inappropriate since, although basic training may be psychologically stressful, “it is not generally outside the range of usual human experience.” R. at 136.
In a June 1983 VA psychiatric consultation report, the examiner reported having contacted the veteran’s treating VA psychiatrist, who had reported that the veteran suffered from, inter alia, PTSD, that the veteran had been diagnosed as schizophrenic in the past, but that his treating psychiatrist had not seen any evidence of schizophrenia. R. at 148.
In a January 1984 decision, the BVA denied the veteran’s claim, noting that the veteran suffered from a personality disorder and that there was no evidence of the presence of an acquired psychiatric disorder during service or within the one-year presumption period following service (see 38 U.S.C. § 1112(a) (formerly § 312); 38 C.F.R. §§ 3.307(a), 3.309(a) (1991)). R. at 159. The Board further stated that the veteran’s reports of excessive physical and verbal abuse were unsupported by “objective data in the file”, and that there was thus no basis for the PTSD diagnosis or relating it to his Marine Corps training. Ibid. The Board also stated, with regard to the veteran’s entrance examination, that “[t]he handwritten clinical entry referable to the veteran’s weight may be interpreted as reading ... either 206 or 306 pounds.” R. at 155.
Between 1984 and 1986, the RO received additional evidence in support of the veteran’s claim, including a September 1984 statement from a private physician stating that the veteran “relates disability status secondary to schizophrenia” (R. at 170), and a December 1985 VA hospitalization report, in which a VA physician stated that “[t]he patient appears to be having an exacerbation of his schizophrenic disorder”. R. at 177. The RO denied his claim again in a February 26, 1986, decision. R. at 182. Between 1988 and 1990, pursuant to the veteran’s request to reopen his claim, the VA received additional evidence, including a March 1990 lay statement from the veteran’s stepmother (R. at 197); reports of VA medical treatment from 1987 to 1990 for various psychiatric complaints, including hallucinations, as well as for other medical conditions (R. at 200-16); school records from 1960 to 1962 (R. at 11-22); and private hospital records from 1965 (R. at 1-10). On April 3, 1990, the veteran testified under oath before the RO that he had been beaten in service, had been made to eat only lettuce and water, had been forced to eat liquid soap, had been locked in a locker, and had been dragged across asphalt. R. at 217-34.
In its January 15, 1991, decision, the BVA denied entitlement to service connection for a psychiatric disorder, concluding: “The evidence received after the Board’s January 1984 denial of service connection for an acquired psychiatric disorder does not provide a new factual basis for allowing the claim.” Sweat, BVA 91-01428, at 5.
II. ANALYSIS
Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally denied claim when “new and material evidence” is presented or secured with respect to that claim. See 38 U.S.C. §§ 7104(b) (formerly § 4004). On claims to reopen previously and finally denied claims, the BVA must conduct a two-step analysis. See Manio v. Derwinski, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is “new and material”. If it is, the Board must then review the new evidence “in the context of” the old to determine whether the prior disposition of the claim should be altered. See Jones (McArthur) v. Derwinski, 1 Vet.App. 210, 215 (1991). If, on the *71 other hand, the Board concludes that there is no new and material evidence, it must provide a written statement of the reasons or bases for that conclusion to explain to the claimant why the claim cannot be reopened. See 38 U.S.C. § 7104(d)(1); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990).
In this case, which was decided prior to this Court’s decision in Manió, supra, the Board did not apply the two-step test for adjudicating claims to reopen previously and finally denied claims. Instead, it concluded that “[t]he evidence received after the Board’s January 1984 denial of service connection for an acquired psychiatric disorder does not provide a new factual basis for allowing the claim.” Sweat, BVA 91-01428, at 5. As the Court noted in Jones, supra, the enactment in 1988 of 38 U.S.C. § 3008 (now § 5108) eliminated the “new factual basis” regulatory standard previously used by VA in reopened claims (38 C.F.R. § 19.194 (1990)). Jones, 1 Vet.App. at 215. Because the Board did not apply the two-step Manió test, it is not clear from its decision whether it concluded that there was new and material evidence to reopen the veteran’s claim for service connection of a psychiatric disorder.
The determination as to whether evidence is “new and material” is a conclusion of law which this Court reviews “de novo” under 38 U.S.C. § 7261(a)(1) (formerly § 4061). Masors v. Derwinski, 2 Vet.App. 181, 185 (1992); see Jones, 1 Vet.App. at 213; Colvin v. Derwinski, 1 Vet.App. 171, 174 (1991). Evidence is new if it is not “merely cumulative” of evidence already in the record. Colvin, supra. Evidence is “material” if it is “relevant and probative” and there is “a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.” Colvin, supra. For the reasons stated below, the Court holds that none of the evidence received by VA since the prior final denial of the claim in the unappealed RO decision in February 1986 is new and material. Therefore, the claim should not have been reopened and any error attendant on the Board’s failure to apply the proper standards in its adjudication of the claim is harmless. See 38 U.S.C. § 7261(b); Kehoskie v. Derwinski, 2 Vet.App. 31, 34 (1992); Godwin v. Derwinski, 1 Vet.App. 419, 425 (1991); Thompson v. Derwinski, 1 Vet.App. 251, 254 (1991).
The March 1990 lay statement from the veteran’s stepmother (R. at 197) is not “new” because it is cumulative of lay statements that had previously been submitted to the VA in 1982 stating that the veteran did not have any psychiatric problems prior to his service (R. at 98, 104-06). The VA medical treatment records for 1987 to 1990 (R. at 200-16) are not “material” because, although they demonstrate that the veteran suffers from symptoms, including hallucinations, they do not provide any diagnosis of a psychiatric disorder or any evidence that the symptoms noted in those reports are related to the veteran’s service or to a psychiatric disorder that was present during his service or within one year thereafter. Therefore, those records are not probative of the issue of service connection for a psychiatric disorder. The veteran’s preservice school (R. at 11-22) and hospital (R. at 1-10) records also are not probative of the issue of service connection, because they do not provide any evidence that the veteran suffered from a psychiatric disorder during service or within one year thereafter. 38 U.S.C. § 1112(a); 38 C.F.R. §§ 3.307(a), 3.309(a). The veteran’s April 1990 sworn testimony before the RO (R. at 217-34), relating the physical and emotional abuse to which he contends he was subjected during his service, is not new because it is cumulative of his January 1982 Statement in Support of Claim (R. at 108), in which he stated essentially the same facts.
III. CONCLUSION
Based on the foregoing analysis and after consideration of the record and the pleadings of the parties, the Court holds that, because none of the evidence presented to or secured by VA since the prior final denial of the veteran’s claim in February 1986 was both new and material, the veteran’s claim should not have been reopened, *72 and any error in the analysis of the merits in the BVA’s January 15,1991, adjudication of that claim was harmless. See 38 U.S.C. § 7261(b); Kehoskie, 2 Vet.App. at 34; Godwin, 1 Vet.App. at 425; Thompson, 1 Vet.App. at 254. Therefore, the Court affirms the January 15, 1991, BVA decision denying service connection for a psychiatric disorder.
AFFIRMED.