Henry B. MONCRIEF, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–246.

United States Court of Veterans Appeals.

June 4, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam era veteran Henry B. Moncrief, appeals from an October 22, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for post-traumatic stress disorder (PTSD). *Henry B. Moncrief,* BVA 91–34599 (Oct. 22, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The Secretary's motion will be granted, and the Board's decision will be affirmed.

The veteran served in the U.S. Navy from January 1963 to September 1966, including a tour of duty at the Guantanamo Bay, Cuba, Naval Station. R. at 1. His claim for service connection for PTSD was denied by a September 20, 1989, BVA decision which found that, even though the evidence of record contained numerous diagnoses of PTSD, the veteran had "not reported any specific in[-]service stressful event that can be the subject of verification." R. at 190. According to 38 C.F.R. § 4.126 (1992), mental disorder will be diagnosed in accordance with the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM–III–R) published by the American Psychiatric Association. Among the criteria required by DSM–III–R for a diagnosis of PTSD is a stressor ("an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone"). *See also* Department of Veterans Affairs (formerly Veterans' Administration) (VA) ADJUDICATION PROCEDURE MANUAL, M21–1, part VI, para. 7.46 (adopting the same criteria).

The evidence before the Board at the time of its 1989 decision included the veteran's February 1986 sworn testimony at a VA regional office (RO) hearing that, while stationed at the Guantanamo Bay Naval Station,

he had been assigned to drive an ammunition truck and had been ordered not to return fire even if fired upon and had also been assigned to night-time security patrols. R. at 118. The veteran had further testified as follows:

> I felt that I was expendable in Cuba.... I ... participated in a[n] armed detail off the coast of Cuba, where I was ordered to destroy certain barrels that were unmarked, I don't know what was in those barrels. It was supposed to be old organs [sic; probably "ordnance"], but they didn't explode when we filled them full of holes. Now, maybe the VA could tell what was in them. I mean, I'd like to know myself. Was [sic] there bodies in there from people that ... got shot over there, and they were just covering them up? Were they like the bodies for people who got machine-gunned trying to get [to] the other side? I mean there was women and children that were dead there too[;] it wasn't just guys, you know. Everybody was getting it.

R. at 108. He had also testified that while in service he had had a physical altercation with an officer who had sought to cross a hallway that the veteran had just mopped; that, as a result, he was given a psychiatric examination at the Boston Navy Hospital; and that upon leaving the hospital he removed the examination report from his official service records and destroyed it before returning to his ship. R. at 105. The 1989 Board decision noted that the veteran had been subjected to stressors both before and after his service, including handling bodies of Vietnam casualties; the murder of a girlfriend; the deaths of two friends from drug overdoses; the accidental death of his father; shooting several intruders at his home and killing one of them; and fear that relatives of the dead man would seek revenge. R. at 191.

██ Pursuant to 38 U.S.C.A. § 5108 (West 1991), a previously and finally disallowed claim must be reopened by the Secretary when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step" analysis. *Manio v. Der-*

*winski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991). The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). The Court recently synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra,* ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993).

In this case, the newly submitted evidence consists of VA Medical Center (MC) progress notes dated November 1984 through June 1990; (R. at 193–206, 219); the report of a March 1990 VA psychiatric examination (R. at 207–08); letters dated July 1990 and April 1991 from Dr. Lial Kofoed, director of a VAMC PTSD Clinical Team (R. at 218, 242); letters dated August 1990 and April 1991 from Daron Friedman, a VA therapist (R. at 220, 244); a January 1991 letter from Dr. James Merikangas, a private neurologist and psychiatrist (R. at 243); and the veteran's sworn testimony at an August 1990 VARO hearing (R. at 221–32). For the reasons that follow, the Court holds that the newly submitted evidence, where "new", is not "material".

██ The VA progress notes contain no new details concerning the veteran's claimed in-service stressors. One entry (apparently from November 1985) states: "He was possi-

bly involved in classified covert operations in Latin America, possibly 'victimizing Cubans on orders', but he also reports being on Guantanamo Naval Base during the tense U.S.–Cuban situation [for] 1 y[ea]r under threat of being overrun." R. at 198. A January 1990 entry reiterates the veteran's account of shooting at barrels off the coast of Cuba; the new account differs from his prior account by adding that he (and others so assigned) had been ordered to push the barrels overboard prior to shooting at them; he also added: "[S]ince they did not explode ... exiled Cubans must have been inside." R. at 201. That evidence is essentially cumulative of his February 1986 testimony and is thus not "new".

■ A February 1990 VAMC entry states that, according to the results of a Minnesota Multiphasic Personality Inventory test, the veteran had "an approximately 82% chance of being correctly diagnosed with [PTSD]." R. at 200. However, the entry is not probative of the existence of an in-service stressor. The report of the March 1990 VA psychiatric examination, performed by Dr. Gail Barton, diagnosed PTSD and described the in-service stressor as follows: "When he was aboard ship off the coast of Cuba, his event that was beyond the usual realm of human experience was being sent to [a] hospital for acting violently (throwing a mop at [an] officer) and subsequently tearing the doctor's report out of his file." R. at 207. Those incidents were the subject of the veteran's February 1986 testimony before the RO; Dr. Barton's statement is not "new" because evidence of that episode had been before the Board at the time of its prior final decision and Dr. Barton's characterization of the episode as a stressor is not "material" because it is not probative of "an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone" pursuant to the DSM–III–R criteria. Furthermore, Dr. Barton's June 1990 entry in the veteran's progress notes does not address the issue of stressors. R. at 219.

■ Dr. Kofoed's July 1990 letter does not address the issue of stressors, other than to note that PTSD "symptoms began during and consequent to his military service, though they have clearly worsened due to other events since then." R. at 218. Dr. Kofoed had offered a similar, though less detailed, opinion in his January 1989 treatment notes (R. at 162). His 1990 letter is not material as to the issue of in-service stressors. His April 1991 letter relates only the veteran's symptomatology and medication and is thus not probative of the issue at hand. R. at 242. The newly submitted letter from Dr. Merikangas repeats his prior diagnoses of PTSD, but does not address the issue of in-service stressors and is thus not probative. R. at 243. The two letters from Dr. Friedman are not probative for that same reason. R. at 220, 244. Finally, the veteran's August 1990 sworn testimony is essentially cumulative of his earlier testimony and is thus not new. R. at 221–32.

The Court holds that the veteran has not submitted new and material evidence so as to justify reopening the PTSD claim.

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court holds that the appellant has not demonstrated that the BVA committed error, in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C.A. §§ 7252, 5107(a), (b), 7104(d)(1), 7261 (West 1991) and the analysis in *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). The Secretary's motion for summary affirmance is granted, and the October 22, 1991 BVA decision is affirmed.

AFFIRMED.