**In the Matter of the Fee Agreement of William G. SMITH in Case Number 90–58.**

**No. 91–619.**

United States Court of Veterans Appeals.

Argued Oct. 12, 1990.

Decided Oct. 7, 1991.

As Amended Dec. 6, 1991.

William G. Smith, pro se.

Thomas A. McLaughlin, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge, concurring, filed separately.

PER CURIAM.

This matter relating to attorney fees arises out of the proceedings in the appeal to this Court in *Jones v. Derwinski*, 1 Vet.App. 210 (1991), in which the Court vacated the Board of Veterans' Appeals

(BVA or Board) decision and remanded the case for readjudication.

Prior to the enactment of the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), an attorney or agent who represented a claimant seeking benefits in proceedings before the Veterans' Administration (now the Department of Veterans Affairs) (Department or VA), the BVA, or both, was limited to a maximum fee of $10. 38 U.S.C. § 3404(c) (1982); *see also Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). (Hereafter in the opinion, we will refer only to representation by, and fee agreements in connection therewith involving, "attorneys," but all such references apply equally to "agents" as to representation and fee agreements.) Section 104(a) of the VJRA repealed the $10–fee limitation and amended the attorney-fee provisions by revising subsection (c) and adding a new subsection (d) to § 3404 (subsequently renumbered as § 5904) of title 38, U.S.Code. VJRA, Pub.L. No. 100–687, § 104(a), §§ 401, 403, 102 Stat. at 4108, 4122.

Attorney William G. Smith seeks review of a decision by the BVA Chairman disapproving of his fee agreement with his client, veteran McArthur Jones. Smith included as one of the issues to be raised in Jones' substantive appeal the disapproval of the fee agreement by the BVA Chairman. Because we hold that the Chairman has no power to review attorney-fee agreements for representation at the administrative level and that, therefore, such a decision may not form the basis of an appeal to this Court, the matter is dismissed. We also note that review in this Court of Board fee agreement decisions must be initiated by a Notice of Appeal (NOA) which complies with U.S.Vet.App.R. 3 and is filed by an aggrieved party.

## I. BACKGROUND

A complete statement of the facts and background pertaining to the underlying appeal are set forth in the Court's opinion in *Jones v. Derwinski*. All citations in this opinion to briefs, memoranda, or the record on appeal refer to those documents as filed in that case. In that opinion we stated: "[The] attorney-fee issues have been separated from the substantive appeal and redocketed in a separate case, *In the Matter of the Fee Agreement of William G. Smith in Case Number 90–58*, U.S.Vet. App. No. 91–619 (Notice of Appeal filed Feb. 2, 1990), as an appeal by the appellant's attorney, William G. Smith, Esquire, from the BVA's decision on the fees provided for in the fee agreement between the attorney and the appellant." *Jones*, at 212.

The claim of the appellant was initially denied by the BVA on January 26, 1988, reopened by the veteran on February 1, 1988, and denied by the VA Regional Office (RO) on August 23, 1988. On December 12, 1988, a VA Form 2–22a appointing William Smith, Esquire, as the veteran's attorney was executed by the veteran and attorney Smith and, apparently, filed with the RO. Br. of Appellant at Exhibit C. On that same date, a Notice of Disagreement with the RO decision was filed by the attorney. R. at 111. The RO held a personal hearing on February 16, 1989, at which the attorney represented the veteran and stated that he would be submitting a fee agreement between him and the veteran and that it would satisfy the attorney-fee provisions of 38 U.S.C. § 7263(c) (formerly 4063(c)). R. at 117. On February 20, 1989, the attorney filed with the BVA the appellant's substantive appeal and the fee agreement.

The fee agreement provided: "[T]he veteran agrees to pay a fee of no less than 20% of the past due benefits that may be awarded in this case. In the event that no past due benefits are paid, the veteran agrees to pay a fee of $1,000. In no event shall the fee be less than the sum of $1,000." R. at 130. The agreement entitled the veteran "to all services [at the administrative level including] a personal hearing, an appeal to the Board[ ], and an appeal to the Court of Veterans Appeals." *Id.*

On September 20, 1989, the BVA Chairman sent a letter to the attorney stating that the BVA was "unable to approve the fee agreement" because it was not in com-

pliance with § 104(a), § 401, and § 403 of the VJRA. R. at 131. Three weeks later, on October 10, the BVA issued a decision denying the reopened claim, and a timely appeal of the October 10 BVA decision to this Court followed with the filing of an NOA on February 2, 1990.

On March 13, 1990, the attorney filed with the Court a separate, second fee agreement between him and the veteran. The fee agreement called for the attorney "to provide legal services in connection with appeal to [the] Court of Veterans Appeals." Attorney–Client Fee Contract at 1 (filed Mar. 13, 1990). The agreement provided for a "fixed fee of $1,000" and "**in addition to** the fixed fee ... a fee equal to 20% of the total amount of any past-due benefits awarded" plus "all costs and expenses incurred by Attorney." *Id.* at 1–2 (emphasis added).

While this matter was pending here on the attorney-fee questions, the BVA on May 23, 1991, decided Mr. Jones' underlying case, which the Court had remanded to the Board on April 10, 1991, in *Jones.* The Board, in *McArthur Jones,* BVA 89–09213 (May 23, 1991), awarded the veteran's claim for service connection for his chronic prostatitis. *See Jones,* BVA 89–09213 at 3. On remand from the Board's May 23, 1991, decision, the VARO denied Mr. Jones a compensable disability rating. On July 10, 1991, Mr. Smith filed a motion in this Court for an award of interim benefits. That motion was denied on August 16, 1991; but the Court ordered the following: that the Secretary file, within 30 days of initiation, a report with the Clerk of the Court on the status of any BVA appeal initiated from the RO decision or file, within 14 days of assumption, a report on whether the BVA has assumed jurisdiction over the RO decision pursuant to 38 C.F.R. § 19.5(a) and § 19.106(a).

Also, while this matter was pending here on the attorney-fee questions, Mr. Smith on June 4, 1991, filed a motion for a protective order directing the Secretary, pending further order of the Court, to set aside and not pay out to Mr. Jones 20% of the past-due benefits to be awarded to Mr. Jones as a result of the BVA's May 23, 1991, decision in his underlying case. On July 26, 1991, the Court denied Mr. Smith's motion on the grounds that he had not demonstrated irreparable injury and had failed to seek the requested relief from the Secretary in the first instance. Mr. Smith also filed on June 4, 1991, an application for a bill of costs, asking the Court to tax certain costs against the Secretary of Veterans Affairs in light of the appellant having prevailed before the Board in its May 23, 1991, decision. The latter motion will not be dealt with in this opinion.

## II.  ANALYSIS

### A.  Statutory Background and Construction

We begin our analysis with a discussion of the authority of the Board and the Court under 38 U.S.C. § 5904 and § 7263 to review and regulate the payment of attorney fees.

Section 5904(c)(2) requires an attorney representing a claimant before the Department or the BVA, or both, to file with the BVA, in those instances where a fee is authorized by § 5904(c)(1), a copy of any fee agreement in connection with such representation. The BVA "may review such a fee agreement, and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable." 38 U.S.C. § 5904(c)(2). A finding or order of the BVA, with respect to the fee, is reviewable by the Court under 38 U.S.C. § 7263(d). Section 7263(d) expressly authorizes the Court, in reviewing such a fee agreement, to "affirm the finding or order of the Board and ... order a reduction in the fee ... if it finds that the fee is excessive or unreasonable." 38 U.S.C. § 7263(d).

As to representation before the Court, § 7263(c) requires that "a person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed." 38 U.S.C. § 7263(c). "The Court, on its own motion or the motion of a party,

may review such a fee agreement" and "order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable." 38 U.S.C. § 7263(c), (d). Since the question of Jones' entitlement to benefits is still pending before the Secretary, we do not deem review of the fee agreement for representation in this Court to be ripe for decision. Accordingly, we will not, despite the invitation of Judge Steinberg to do so, undertake resolution of the issues relating to that contract.

▮ In summary, § 7263 provides this Court with the authority to affirm or reduce BVA decisions as to fee agreements submitted to the BVA under § 5904(c)(2) for representation before VA/BVA as well as to review originally and directly those submitted to the Court under § 7263(c) for representation before the Court. The BVA is authorized to review those fee agreements submitted to it under § 5904(c)(2) for representation before VA, the BVA, or both, but only after the representation has actually been undertaken before VA or BVA. *See Nagler and Jones v. Derwinski*, 1 Vet.App. 297, 302, 303 (1991).

### B. Reviewability of BVA Chairman Decision

▮ In this case, the action challenged on appeal was taken by the BVA Chairman, not the Board. Under 38 U.S.C. § 7252(a) and § 7266(a) (formerly § 4052 and § 4066), this Court may review an action of the BVA Chairman when the Chairman has acted **on behalf of the Board** and has statutory authority to so act. We find no such authority for the Chairman to act for the Board on attorney-fee agreements, and hence, the attorney's appeal must be dismissed. We further note that no authority could be provided to the Chairman by the proposed VA Regulation, published by the Secretary of Veterans Affairs on August 18, 1989, providing that the Chairman's ruling on a motion for review of a fee agreement "will constitute a final decision of the Board with respect to the motion." Proposed VA Regulation, 54 Fed. Reg. 34,353 (1989) (to be codified at 38 C.F.R. § 20.609(i)) (proposed Aug. 18, 1989). That is because review of fee agreements for VA/BVA representation is a matter reposed by the statute in the Board itself and not in the Secretary, as had been proposed in the Senate-passed version of S. 11. *See* 134 Cong.Rec. S16651 (daily ed. Oct. 18, 1988) and 134 Cong.Rec. H10345 (daily ed. Oct. 19, 1988).

Although 38 U.S.C. § 5904(c)(2) assigns to the "Board" the responsibility to issue a "finding or order of the Board" with respect to a fee "called for in the agreement," up to this point, review of fee agreements has been carried out by the Chairman generally following the above-cited pending proposed BVA regulations published in August 1989.

Section 7101(a) (formerly § 4001) of title 38, U.S.Code, provides that the Board is "under the administrative control and supervision" of the Chairman. Section 7102(c) (formerly § 4002) and § 7103(a), (b) (formerly § 4003) of title 38, U.S.Code, provide the procedure by which the Board is to make its determinations. These provisions distinguish between "any proceeding initiated before the Board[,]" which is to be decided, by majority vote, by a "section of the Board" to which the proceeding is "assigned ... by the Chairman" (38 U.S.C. § 7102(c)), and a reconsideration of a decision of a Board section which may be ordered by the Chairman acting alone but must then be heard and decided, by majority vote, by "an expanded section of the Board" (38 U.S.C. § 7103(b)).

The statute also assigns to the Chairman certain other specific functions: to assign Board members to Board sections (§ 7102(a)(1)), to designate chief members of sections (*id.*), to designate temporary members of the Board (§ 7101(c)), to designate acting members of the Board (§ 7102(a)(2)), and to designate Board members to hold hearings (§ 7102(b)). Hence, for example, the Chairman would have the authority to assign review of fee agreements to a single three-member Board section, and to assign himself and/or the Vice-Chairman to serve thereon, so as to maintain consistent interpretation and application of the law and regulations.

However, based on the entire statutory scheme and its delineation between functions assigned to the Chairman and those assigned to the Board, we hold that neither the Chairman's "administrative control and supervision" authority under § 7101(a) nor any other authority authorizes him to carry out other functions specifically assigned to the Board by statute, specifically here the fee-agreement review function under § 5904(c)(2).

■ There being no authority reposed in the Chairman to review this or any other fee agreement on behalf of the Board, the September 20, 1989, decision of the Chairman is not a lawful exercise of the Board's review authority under § 5904(c)(2). We hold that the *ultra vires* action of the Chairman must be treated as though it had never been taken. *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936) (action promulgating regulation not in harmony with authorizing statute makes regulation "a mere nullity"). *See also United States v. Larionoff*, 431 U.S. 864, 872 n. 12, 97 S.Ct. 2150, 2156 n. 12, 53 L.Ed.2d 48 (1977) (same); *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965) (same). Thus, there was no decision to be appealed to this Court.

■ We note for future guidance that in order to obtain review in this Court of fee-agreement decisions by the Board, an aggrieved party must comply with the requirements of 38 U.S.C. § 7266 and U.S.Vet.App.R. 3. Section 7266(a) provides in pertinent part: "In order to obtain review by the Court of Veterans Appeals of a final decision of the Board of Veterans' Appeals, a person adversely affected by that action must file a notice of appeal with the Court." Thus, an NOA under § 7266(a) by a party aggrieved by a BVA finding or order is the appropriate and indispensable procedure to obtain review here of a BVA decision on a fee agreement. Under Rule 3(c) of the Rules of Practice and Procedure of this Court, such an NOA must, among other things, include the name of the party or parties taking the appeal and designate the Board decision appealed

from. In this case, the attorney could not have complied with the § 7266 NOA requirements because, as we hold above, there was no valid final BVA decision from which he could have appealed.

The purported appeal of attorney Smith regarding that decision is, therefore, DISMISSED.

STEINBERG, Associate Judge, concurring:

I concur in the decision of the Court dismissing the appeal of attorney William G. Smith from a purported decision of the Chairman of the Board of Veterans' Appeals (BVA or Board) disapproving of certain attorney fees provided for in his agreement with the appellant, veteran McArthur Jones, in connection with *Jones v. Derwinski*, 1 Vet.App. 210 (1991). In that case, the Court vacated the Board's decision and remanded the case for readjudication, retaining jurisdiction.

However, I would go further. I believe there are compelling reasons for the Court to carry out a *sua sponte* review of the amended fee agreement for representation before this Court.

## I.  INTRODUCTION AND SUMMARY

Prior to the enactment of the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 100 Stat. 4105 (1988), an attorney or agent who represented a claimant seeking benefits in proceedings before the Veterans' Administration (now the Department of Veterans Affairs) (Department or VA), the BVA, or both, was limited to a maximum fee of $10. 38 U.S.C. § 3404(c) (1982); *see also Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). (Hereafter this opinion refers only to representation by, and fee agreements in connection therewith involving, "attorneys", but all such references apply equally to "agents" as to representation and fee agreements.) Section 104(a) of the VJRA repealed the $10–fee limitation and amended the attorney-fee provisions by revising subsection (c) and adding a new subsection (d) to section 3404 of title 38, U.S.Code.

VJRA, Pub.L. No. 100–687, §§ 104(a), 401, 403, 102 Stat. at 4108, 4122. (In May 1991, in Pub.L. No. 102–40, 105 Stat. 187 (1991), as part of a broad reclassification of title 38 of the U.S.Code § 3404 was renumbered as § 5904; hereafter in this opinion citations to reclassified sections of title 38, U.S.Code, will be to the renumbered sections, with the former section number shown in a parenthetical.)

Attorney Smith seeks review of a decision by the BVA Chairman disapproving of his fee agreement with his client. Smith included as one of the issues to be raised in Jones' substantive appeal the disapproval of the fee agreement by the BVA Chairman. Because we hold that the Chairman has no power to review attorney-fee agreements for representation at the administrative level and that, therefore, such a decision may not form the basis of an appeal to this Court, the purported appeal is dismissed.

However, I would proceed to review, *sua sponte*, the fee agreement for representation before the Court. On the basis of such a review, I conclude that the parties have the following options as to types of fee agreements for representation before the Court. If the attorney elects to be paid by the Secretary of Veterans Affairs out of any past-due benefits awarded, the **total** attorney fee may not exceed 20 percent of past-due benefits for that attorney's total representation of the claimant on the claim before all forums where representation is provided. If the attorney does not receive and seek to exercise an assignment of a portion of past-due benefits from the veteran to be paid directly to the attorney by the Secretary, the fee may be a fixed fee (or a minimum fee) or a contingent fee if victorious, or a combination of such types of fees. I would also hold that an attorney is entitled, as a matter of law regardless of whether provided for in the fee agreement, to reimbursement by the client for reasonable expenses in connection with representation in an appeal here or before VA/BVA.

In connection with reaching the conclusions described in the preceding paragraph regarding the fee agreement for representation before the Court, I also find it necessary to reach certain questions regarding the validity of the fee agreement as to representation before VA/BVA. I conclude that there is a valid fee agreement between the attorney and the claimant as to VA/BVA representation because each of the following four statutory prerequisites are met: (1) an initial BVA decision has been made on the underlying claim in question; (2) a Notice of Disagreement (NOD) on or after November 18, 1988, has been filed as to that claim; (3) the services are rendered as to that claim; and (4) the attorney is retained within one year after the BVA decision in question.

## II. BACKGROUND

A complete statement of the facts and background pertaining to the underlying claim and appeal are set forth in the Court's opinion in *Jones v. Derwinski*. All citations in this opinion to briefs, memoranda, or the record on appeal refer to those documents as filed in that case. In that opinion we stated: "[The] attorney-fee issues have been separated from the substantive appeal and redocketed in a separate case, *In the Matter of the Fee Agreement of William G. Smith in Case Number 90–58*, U.S.Vet.App. No. 91–619 (Notice of Appeal filed Feb. 2, 1990), as an appeal by the appellant's attorney, William G. Smith, from the BVA's decision on the fees provided for in the fee agreement between the attorney and the appellant." *Jones*, at 212.

The claim of the appellant in *Jones v. Derwinski* was initially denied by the BVA on January 26, 1988, reopened by the veteran on February 1, 1988, and denied by the VA Regional Office (RO) on August 23, 1988. On December 12, 1988, a VA Form 2–22a appointing William Smith as the veteran's attorney was executed by the veteran and attorney Smith and, apparently, filed with the RO. Br. of Appellant at Exhibit C. On that same date, an NOD was filed by the attorney with the RO decision. R. at 111. The RO held a personal hearing on February 16, 1989, at which the attorney represented the veteran and stated

that he would be submitting a fee agreement between him and the veteran and that it would satisfy the attorney-fee provisions of the VJRA. R. at 117. On February 20, 1989, the attorney filed with the BVA the appellant's substantive appeal and the fee agreement.

The fee agreement provided: "[T]he veteran agrees to pay a fee of no less than 20% of the past due benefits that may be awarded in this case. In the event that no past due benefits are paid, the veteran agrees to pay a fee of $1,000. In no event shall the fee be less than the sum of $1,000." R. at 130. The agreement made no provision for "costs and expenses" over and above the fixed fee/contingency provisions. The agreement entitled the veteran "to all services before the Veterans [sic] Administration to include a personal hearing, an appeal to the Board of Veterans [sic] Appeals, and an appeal to the Court of Veterans Appeals." *Ibid.*

On September 20, 1989, the BVA Chairman sent a letter to the attorney stating that the BVA was "unable to approve the fee agreement" because for two reasons it was not in compliance with sections 104(a), 401, and 403 of the VJRA. R. at 131. Three weeks later, on October 10, the BVA issued a decision denying the reopened claim, and a timely appeal of the October 10, 1989, BVA decision to this Court followed with the filing of an NOA on February 2, 1990.

On March 13, 1990, the attorney filed with the Court a separate, second fee agreement entered into on January 29, 1990, between him and the veteran. The fee agreement called for the attorney "to provide legal services in connection with appeal to [the] Court of Veterans Appeals." Attorney–Client Fee Contract at 1 (filed Mar. 13, 1990). The agreement provided for a "fixed fee of $1,000" and "**in addi-**

tion to** the fixed fee ... a fee equal to 20% of the total amount of any past-due benefits awarded ... to be paid by [VA] directly from any past-due benefits awarded", or to be paid by the claimant, plus "all costs and expenses incurred by Attorney". *Id.* at 1–2 (emphasis added).

On November 1, 1990, the Secretary of Veterans Affairs, as requested by the Court, filed a Supplemental Memorandum on the authority of the BVA and the Court to review fee agreements. On November 22, 1990, the appellant, through his attorney, filed a response to the Secretary's Supplemental Memorandum.

While this matter was pending here on the attorney-fee questions, the BVA on May 23, 1991, decided Mr. Jones' underlying case, which the Court had remanded to the Board on April 10, 1991, in *Jones.* The Board, in *McArthur Jones,* BVA 89–09213 (May 23, 1991), awarded the veteran's claim for service connection for his chronic prostatitis.[1] Hence, our decision in the current matter as to contingent fees will have direct rather than conditional applicability to the above facts if the disability is found compensable. Mr. Smith filed a motion here on July 10, 1991, for the award of interim benefits following a June 24, 1991, decision by the VARO denying a compensable rating, upon remand from the Board's May 23, 1991, decision. That motion was denied on August 16, 1991; but the Court ordered the following: that the Secretary file, within 30 days of initiation, a report with the Clerk of the Court on the status of any BVA appeal initiated from the RO decision or file, within 14 days of assumption, a report on whether the BVA has assumed jurisdiction over the RO decision pursuant to 38 C.F.R. §§ 19.5(a), 19.106(a).[2]

Also, while this matter was pending here on the attorney-fee questions, attorney Smith on June 4, 1991, filed a motion for a

---

1. In my separate views in *Jones v. Derwinski,* at 305–07, I expressed my conclusion that the Board's October 10, 1989, decision denying service connection for chronic prostatitis was "clearly erroneous" and should be reversed under 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)).

2. The RO's July 10 action raises serious questions about the Department's good faith in rat-

ing the claimant's service-connected prostatitis. In its decision finding the service-connected prostatitis to be zero rated, the RO expressly limited itself to considering only the Board's May 23, 1991, decision, despite the fact that the record contained results of two 1988 private physician's reports with regard to the claimant's disease. Moreover, it is difficult to understand how the RO could have concluded that it was

protective order directing the Secretary, pending further order of the Court, to set aside and not pay out 20 percent of the past-due benefits to be awarded to Mr. Jones as a result of the BVA's May 23, 1991, decision in his underlying case. On July 26, 1991, the Court denied this motion on the grounds that the attorney had not demonstrated irreparable injury, having failed to exhaust administrative remedies by first requesting the relief sought from the Secretary.

On June 28, 1991, the attorney filed with the Court under protest, along with a motion for waiver of the fee, the $50 filing fee in conjunction with the appeal of the BVA Chairman's September 20, 1989, attorney-fee decision, as redocketed under No. 91–619. Attorney Smith also filed on June 4, 1991, an application for a Bill of Costs, asking the Court to tax certain costs against the Secretary of Veterans Affairs in light of the appellant's having prevailed in his appeal to this Court by virtue of the Board's May 23, 1991, decision. The latter motion is not dealt with in the majority opinion, nor in this opinion. The former motion is not dealt with in the majority opinion; it is dealt with in this opinion.

### III. ANALYSIS

#### A. Reviewability of BVA Chairman Decision

I concur in part II. B. of the per curiam opinion.

appropriate to rate a disability without a current VA examination or other current medical evidence. The last VA examination of the veteran was on November 3, 1987. Our decisions have held that under certain circumstances "fulfillment of the statutory [38 U.S.C. § 5107(a) ] duty to assist includes the conduct of a thorough and contemporaneous medical examination." *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991). This would certainly seem to be such a situation.

**3.** In line with this approach is the construction by VA's General Counsel of the current attorney-fee restrictions in section 5904(c), as well as those in section 3404 before the enactment of the VJRA, as applicable to only those fees agreed to be paid by the claimant himself or herself or out of past-due benefits. *See* VA O.G.C. Prec. 19–89 (Dec. 12, 1989); VA Op.G.C. 11–86 (May 5, 1986). VA regulations proposed

#### B. Court Review of Fee Agreements on its own Motion

As to representation before the Court, section 7263(c) (formerly § 4063(c)) requires that "a person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed." 38 U.S.C. § 7263(c). "The Court, on its own motion or the motion of a party, may review such a fee agreement" and "order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable." 38 U.S.C. § 7263(c), (d).

The attorney-fee provisions of section 5904 must be construed in light of the provisions of 38 U.S.C. § 5905 (formerly § 3405) subjecting to criminal liability any one who "directly, or indirectly solicits, contracts for, charges, or receives, or attempts [to charge or receive,] ... any fee or compensation" for actions covered by section 5904 except as provided in that section. It is possible that any interpretation of section 5904 by this Court could be used in determining whether certain conduct by an attorney constituted a federal criminal offense. Consequently, the statutory prohibitions and limitations in section 5904 should be strictly construed.[3]

Although authorized to review, on its own motion, attorney-fee agreements for

to implement the VJRA would provide that fees to be paid by a "disinterested third party" to an attorney representing a VA claimant are not covered by section 5904(c). 54 Fed.Reg. 34,352 (1989) (to be codified at 38 C.F.R. § 20.609(d)) (proposed Aug. 18, 1989). In view of the potential criminal liability, I see no reason to disagree with this construction.

Perhaps somewhat less consistent with the narrow-construction approach is the VA General Counsel interpretation of both the former and amended provisions of section 5904(c) as applicable to VA administrative debt-collection proceedings and administrative waiver-of-indebtedness proceedings although not applicable to "proceedings outside VA's benefit-adjudication process, such as VA's efforts to determine and enforce its contractual rights arising out of its loan-guaranty program, to set off debts against Federal payments other than VA-benefit payments, or to collect debts through referral to

representation before this Court, the Court has not yet undertaken such a review, and the majority has elected not to do so in this case. I believe the Court should screen all agreements filed with it under section 7263(c) and carry out a *sua sponte* review only in exceptional circumstances, such as when there is a substantial question of conformity with the statutory parameters. Because the specific contingent fee provided for in the second fee agreement as to representation before the Court raises a substantial legal question about the meaning of 38 U.S.C. § 5904(d) as to contingency agreements providing for direct payment by the Secretary of a portion of past-due benefits, I conclude that this is such an exceptional case and, therefore, that that agreement should be so reviewed.

The majority states that "review of the fee agreement in this Court" is not "ripe for decision". Majority opn., *ante*, p. 495. I disagree. It is ironic that the Court finds it expedient to "note for future guidance" that a party aggrieved by a BVA fee-agreement decision may obtain review of that decision here only if he or she files a separate Notice of Appeal (NOA) from that specific BVA decision. Why is it appropriate to provide such "future guidance" as to the NOA requirement but provide no such guidance as to the meaning of the statutory attorney-fee provisions when the four corners of the fee agreement filed with the Court squarely raise substantial questions of conformity with the statutory parameters? I am at a loss to understand the majority's approach of selective guidance pronouncements.

Moreover, in addition to the very real need to provide future parties—claimants, attorneys, and the Secretary—with some guidelines for the types of fee agreements that are permissible under the law, the three parties in the present case are specifically in need of this guidance. The majority leaves each of them in a perilous position. As to attorney Smith, if past-due benefits are awarded, how can he fairly decide whether to take the 20 percent from the Secretary without knowing the impact of his doing so on any other fee he might otherwise be entitled to collect for his representation of Mr. Jones on the claim? As to Mr. Jones, how can he know that he is not permitted to pay any fee for attorney Smith's VA/BVA representation of him if Smith takes the 20 percent directly from the Secretary (since if the BVA does not initiate a fee agreement review, it is altogether possible that the attorney may seek payment under the first agreement)? Indeed, it appears that attorney Smith already has secured the $1,000 minimum for which the VA/BVA representation agreement provides. So how does the third party, the Secretary, know that he should deduct that $1,000 from the direct payment to Smith if Smith seeks direct payment which his protective motion suggests he certainly may elect to do?

The answers to these questions are dependent on the interpretation of the statute, and these issues are fully presented at this point by the fee agreement applicable to representation here. The fact that the question of the claimant's entitlement to past-due benefits is still pending does not make the issues presented any less in need of resolution as to these parties. Indeed, the fact that the adjudications and legal representation continue below makes the parties' need even greater in certain respects. With the knowledge that taking a 20–percent contingency fee directly from the Secretary would preclude all other fees, the attorney and client may decide on a further modification of the fee agreement between them in light of the extended nature of the proceedings and the possibility of a second appeal to this Court on the underlying claim.

Of course, it remains open to any of the three parties to petition the Court to review the fee agreement for representation here and for the BVA to elect to carry out a review of the agreement for VA/BVA rep-

---

other Federal agencies or to credit reporting agencies." VA O.G.C. Prec. 19–89 at 6 (Dec. 12, 1989); *see also Bahnmiller v. Derwinski*, 923 F.2d 1085 (4th Cir.1991) (both old and new versions of sections 5904 and 5905 are applicable to administrative waiver of indebtedness proceedings).

resentation, taking into consideration the analysis set forth in this opinion. If such a BVA decision were not acceptable to either the attorney or the claimant, either could obtain review of it by filing an NOA with the Court within 120 days after that decision is mailed by the BVA. In such proceedings, perhaps, definitive guidance would be provided on the many questions which, in my view, should be resolved by the Court at this point and which I will discuss below.

### C. Construction of Applicability of Fee Agreements as to Representation Before the Court

As noted above, subsection (d) of section 7263 authorizes the Court, in reviewing a fee agreement under subsection (c) of that section to "order a reduction of the fee called for in the agreement if it [the Court] finds that the fee is excessive or unreasonable." This provision authorizes the Court, *sua sponte*, to review a fee agreement for conformity with the statute and to order a reduction, in whole or in part, of the fee as unreasonable to the extent that the Court finds that the fee agreement does not conform to the statute. A fee agreement that is not in accordance with the statutory parameters is "unreasonable" as a matter of law—*"per se* unreasonable".

As stated earlier, two fee agreements between attorney Smith and the veteran claimant have been filed with the Court. The first agreement was a valid agreement with respect to attorney Smith's "services ... to include an appeal to the Court of Veterans Appeals". R. at 130. The second agreement did not obligate the attorney to perform any services that he was not already obligated to perform under the first agreement. However, the second agreement provided for an attorney fee ($1,000 plus 20 percent of past-due benefits directly payable to the attorney by the Secretary or payable by the veteran) that was different from the first (a $1,000 minimum fee or 20 percent of past-due benefits, whichever is greater, with the fee paid by the veteran). The second agreement, but not the first, also provided explicitly for reimbursement of the attorney for specified "costs and expenses". Attorney–Client Fee Contract at 2 (filed March 13, 1990).

The veteran first retained the attorney not later than December 12, 1989, when a VA Form 2–22a appointing him as the veteran's attorney was executed and, apparently, filed with the RO. At that point, the effort being undertaken was to prevail on the claim before the Department; an appeal to this Court was only a contingent possibility. In contrast, when the attorney filed the March 13, 1990, fee agreement with the Court for representation in the underlying appeal decided in *Jones v. Derwinski*, more than 15 months had elapsed since he had undertaken the veteran's representation and an NOA had been filed here from the BVA's adverse decision of October 10, 1989, on the underlying claim. Hence, the parties were dealing with a different set of circumstances at that point. To disregard the second agreement because of a possible technical failure of consideration would be a frustration of the parties' intent and a denial of the reality of what had transpired prior to their entering into the second agreement. Under all the circumstances, the second agreement must be construed as intended to be a modification of so much of the first agreement as related to representation before the Court. *See E. Farnsworth, Contracts* § 710, at 492 ("[t]he overarching principle of contract interpretation is that the court is free to look to all the relevant circumstances surrounding the transaction").

### D. Types of Fees Permissible

The next issues to be decided are: (1) the types of fees permissible under the statute for representation before the Court; and (2) whether the fees called for in the modified agreement are in accordance with the types of fees permissible and are thus not *per se* unreasonable. The statute does not differentiate between the types of fees allowable for representation before the Court and the types allowable for representation before VA/BVA. Hence, the statutory provisions and legislative history regarding the types of fees apply equally to both situations.

In enacting the revised attorney-fee provisions, Congress articulated three main objectives in the statutory provisions and their legislative history. First, Congress wanted to eliminate the $10 limitation that applied to representation on VA claims matters (except for home-loan-guaranty and insurance issues) before VA/BVA, while at the same time ensuring that "unreasonable or excessive" fees would not be charged for such representation.[4] Second, Congress wanted to ensure that VA claimants with limited resources would be able to acquire legal representation through contingency-fee arrangements, but did not want more than 20 percent of past-due benefits to be paid *directly* by the government toward a contingent fee.[5] And, third, Congress wanted claimants to have maximum freedom, consistent with the first two objectives, to be able to obtain effective representation.[6]

Indeed, promoting such maximum freedom for VA claimants was the principal reason why in the final VJRA compromise Congress rejected the Senate-passed provision which would have placed an overall dollar cap on the amount of fees permitted. As was stated by Senator Alan Cranston, the Chairman of the Senate Committee on Veterans' Affairs as well as the Senate author, and floor manager during Senate consideration, of the VJRA, during Senate consideration of the compromise agreement on the legislation (S.11) enacted as Public Law 100–687: "[I]f we are going to give veterans real access to judicial review, we must give them access to good, qualified attorneys. I believe that allowing attorneys to cha[r]ge reasonable fees will accomplish that goal and was convinced by the position of the House that its provisions on this point are preferable to the highly restrictive provisions of the Senate-passed measure."[7]

As discussed in part C, above, the modified fee agreement calls for the claimant to pay for (1) representation before VA/BVA the greater of $1,000 or a fee of 20 percent of the past-due benefits awarded in the case; and (2) for representation before this Court, a $1,000 retainer plus a contingent fee of 20 percent "to be paid by the [Department] directly from any past-due benefits awarded on the basis of the client's claim ...", or to be paid by the claimant, plus "all costs and expenses incurred by Attorney." Attorney-client Fee Contract at 2 (filed March 13, 1990).

(1) *Attorney's entitlement to reimbursement of reasonable expenses.*—Even had the first agreement not been modified to require reimbursement by the claimant of the attorney for the expenses incurred by him in undertaking the appeal to this Court, such reasonable expenses are separate from the attorney fee and are to be reimbursed by the claimant as a matter of law.[8] This analysis would be equally appli-

---

4. *See* 38 U.S.C. §§ 5904(c)(2), 7263(d); *cf.* 134 Cong.Rec. S16651–2 (daily ed. Oct. 18, 1988) and 134 Cong.Rec. H10345 (daily ed. Oct. 19, 1988) (Jointly prepared by the House and Senate Veterans' Affairs Committees).

5. *See* 38 U.S.C. § 5904(d); 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (statement of Senator Cranston: "To assist claimants, whose resources may be limited ..., the compromise agreement would provide that a claimant and an attorney may enter into a contingency agreement pursuant to which the [Secretary] will pay the attorney's fees directly out of past-due ... benefits awarded to the claimant.... [T]he fee for representation ... under such an arrangement for payment out of past-due benefits would be limited to 20 percent of the past-due benefits awarded.").

6. *See id.* at S16647 ("along with granting veterans the right to obtain judicial review we should grant them as much latitude as possible to make determinations about their representation").

7. *Ibid.; see also* 134 Cong.Rec. S16637 (daily ed. Oct. 18, 1988) (statement of Sen. Mitchell: "Capping allowable attorneys' fee[s] as under the original language of S. 11 could serve to reduce a veteran's ability to secure the best legal counsel.... Loosening the fee limitation should make it easier for veterans to secure capable legal representation."); *id.* at S16636 (statement of Sen. Simpson opposing the Senate's agreement with the House as "virtually eliminat[ing] a cap on attorney's fees"); *id.* at S16651 (daily ed. Oct. 18, 1988) and H10345 (daily ed. Oct. 19, 1988) (Explanatory Statement).

8. *See Manzo v. Dullea,* 96 F.2d 135, 138 (2d Cir.1938) (attorney entitled to reimbursement by client for expenses of litigation even when contingency-fee retainer agreement is silent on such reimbursement "because the law implies

cable to the reimbursement for such expenses for attorney representation before VA/BVA even where, as here, the agreement does not provide for such reimbursement. This conclusion accords with the position taken by the Department in its proposed regulation: "Any representative may be reimbursed for expenses incurred on behalf of a veteran ... in the prosecution of a claim for benefits pending before the Department of Veterans Affairs." Proposed VA Regulation, 54 Fed.Reg. 34,-352–4 (1989) (to be codified at 38 C.F.R. § 20.610(b)) (proposed Aug. 18, 1989).

(2) *Effect on permissible attorney fee of attorney receiving direct payment by Secretary from past-due benefits.*—The modification of the first agreement by the second agreement raises the very important question of whether the provisions on contingent fees in 38 U.S.C. § 5904(d)(1) and (2) require that a fee agreement calling for a contingent fee to be paid directly by the Secretary must be **entirely** contingent. In *Nagler v. Derwinski,* 1 Vet.App. 297 (1991) (Notice of Appeal filed October 10, 1990), the BVA Chairman, in reviewing the fee agreement, proposed a ruling that where an agreement calls for a contingent fee to be paid directly by the Secretary the fee, in addition to being limited to 20 percent of past-due benefits, must be fully contingent. *Nagler,* Verified Petition for Extraordinary Relief at Exhibit F. This is the Department's position in its proposed regulations.[9] This issue was not resolved in *Nagler and Jones v. Derwinski,* 1 Vet.App. 297 (1991).

I agree with the position taken by the Secretary and the BVA Chairman that the **total** fee payable to the attorney for representation on a VA claim may not exceed 20 percent of the total past-due benefits awarded based on that claim when a claimant and an attorney have entered into a fee

agreement, such as the second agreement here, calling for a contingent fee **to be paid directly by the Secretary** (as an alternative to payment by the client/claimant) out of any past-due benefits awarded and if the attorney, in fact, receives payment directly from the Secretary. The basis for this conclusion follows.

Paragraph (1) of subsection (d) of section 5904 provides:

(1) When a claimant and an attorney have entered into a fee agreement described in paragraph (2) of this subsection, **the total fee payable** to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.

38 U.S.C. § 5904(d)(1) (emphasis added). Paragraph (2) of subsection (d) of section 5904 provides:

(2) A fee agreement referred to in paragraph (1) of this subsection is one under which (i) **the amount of the fee payable to the attorney is to be paid to the attorney by the [Secretary] directly from any past-due benefits awarded on the basis of the claim,** and (ii) the amount of the fee is contingent on whether or not the matter is resolved in a manner favorable to the claimant.

38 U.S.C. § 5904(d)(2) (emphasis added).

Attorney Smith's position would, in effect, read into paragraph (1) of subsection (d) the words "by the Secretary" after "payable". I cannot accept this approach. First, this interpretation would run directly counter to the use of "payable" in paragraph (2) where a similar insertion of "by the Secretary" would render the provision tautological. Second, this reading would be inconsistent with the legislative history.

---

such a promise by the client in addition to what was promised in the agreement regardless of any recovery"); *Jaslow v. United States,* 308 F.Supp. 1164 (E.D.N.Y.1970) (actual disbursements by attorney allowable in addition to 20-percent limitation on attorney fee under Federal Tort Claims Act); *cf. United States v. Ketchem,* 420 F.2d 901, 904 (4th Cir.1969) (court-appointed defense attorney entitled to reimbursement by U.S. for expenses of investigation in criminal

case). *See generally* 10 *Wright, Miller & Kane, Federal Practice and Procedure* § 2666 (1983).

9. Proposed VA Regulation, 54 Fed.Reg. 34,352–53 (1989) (to be codified at 38 C.F.R. § 20.-609(h)(1)(i)) (proposed Aug. 18, 1989) (providing that if payment for services is to be made by the Department directly out of past-due benefits, "the total fee payable (excluding expenses)" may not exceed 20 percent of past-due benefits).

The Explanatory Statement on the Compromise Agreement on S. 11, as Amended, the "[VJRA]", produced by the two Committees on Veterans' Affairs and entered into the Congressional Record as part of the consideration of the final version of the legislation in both Houses is the most authoritative form of legislative history for that law. That document states:

> [T]he claimant and the attorney, pursuant to a contingency agreement, may agree to have the [Secretary] pay the attorney's fee out of past-due benefits, but the fee **under such an agreement** cannot exceed 20 percent of the past-due benefits awarded.

134 Cong.Rec. S16652 (daily ed. Oct. 18, 1988) and 134 Cong.Rec. H10345 (daily ed. Oct. 19, 1988) (emphasis added). Regarding contingent-fee agreements with direct payment by the Secretary, Senator Cranston stated that "the **fee for representation** [in such a situation] ... would be limited to 20 percent of the past-due benefits awarded." 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (emphasis added); *see* footnote 5. Also, Senator Mitchell stated as follows: "Under a contingency agreement, the attorneys' fees can be paid out of past due benefits, although **the fee** cannot exceed 20 percent of the past due benefits awarded." 134 Cong.Rec. S16637 (daily ed. Oct. 18, 1988) (emphasis added).

Hence, paragraphs (1) and (2) of section 5904(d), read together as they must be, provide that if the claimant and the attorney enter into a contingent-fee arrangement with payment directly by the Secretary and the attorney receives such payment from the Secretary, the attorney's "total fee" may not exceed 20 percent of the past-due benefits awarded regardless of how much of the 20 percent is paid directly by the Secretary.

The statutory scheme thus sets up the following sets of options and alternatives for the parties. An attorney desiring to be guaranteed receipt of the contingent fee if the claim is resolved in a manner favorable to the claimant has the option of entering into an agreement with the claimant to have the fee paid directly by the Secretary out of any past-due benefits awarded. However, as a consequence of being guaranteed payment if victorious, a successful attorney who opts to receive such payment directly from the Secretary has to accept a total fee limited to the amount paid to him directly by the Secretary, which may not exceed 20 percent of the past-due benefits awarded.

On the other hand, an attorney not wanting to be limited to that 20 percent if victorious may enter into an agreement with the claimant to have the fee paid by the claimant rather than the Secretary (or the attorney would have the option, under the kind of agreement entered into here in the second agreement, of waiving payment by the Secretary and relying solely on the client for payment), but the attorney then assumes the risk that the claimant will not pay the fee or will not pay in full.[10]

An attorney not wanting to risk a completely contingent fee may enter into an agreement with the claimant, as was done in the first agreement here, to have both a fixed and a contingent fee, as long as the attorney is not paid the contingent fee directly by the Secretary.[11]

(3) *Direct payment by the Secretary of contingent fee.*—Section 5904(d)(3) provides that the Secretary "**may** direct that payment of any attorneys' fee under a fee arrangement" (38 U.S.C. § 5904(d)(3) (emphasis added)) calling for direct payment of up to 20 percent of any past-due benefits awarded. It is necessary to clarify at this point that this provision is discretionary only in the sense that the Secretary is authorized to decide to publish a rule pro-

---

10. *See* 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (statement of Senator Cranston: "This provision ... would not limit attorneys' fees under general contingency-fee arrangements providing for payment in a manner other than having the [Secretary] make the payment out of the amount of past-due benefits.")

11. *See* Proposed VA Regulation, 54 Fed.Reg. 34352 (1989) (to be codified at 38 C.F.R. § 20.-609(e)) (proposed August 18, 1989) (providing that a fee may be based on "a fixed fee, hourly rate, **a percentage of benefits recovered,** or a **combination** of such bases" (emphasis added)).

claiming that no direct payments will be made. If that is not done, a claimant may validly assign to the attorney his or her rights to the past-due benefits, and the Secretary is obliged under common law contract principles to honor the assignment.[12] Indeed, the Department's pending proposed regulation provides that such an assignment "will be honored by the Department" if the total fee called for does not exceed 20 percent of the past-due benefits, the fee is contingent on a favorable outcome, and past-due benefits are awarded. Proposed VA Regulation, 54 Fed.Reg. 34,-353 (1989) (to be codified at 38 C.F.R. § 20.-609(h)(1)) (proposed Aug. 18, 1989).

There remains for resolution the question of whether the "total fee" limitation applies to the fee for representation before VA/BVA (or even before the U.S. Court of Appeals for the Federal Circuit) as well as the fee for representation as to the underlying claim before the Court. This question as to a fee for VA/BVA representation is properly presented only if the modified fee agreement as to representation before VA/BVA, despite the contentions of the Secretary and the BVA Chairman to the contrary, does lawfully provide for the payment of an attorney fee to attorney Smith for the representation undertaken by him before VA and BVA *prior to* the appeal here that was decided in *Jones v. Derwinski*. Resolving this threshold question requires legal analysis over much the same statutory terrain that would have had to have been traversed had the Court been reviewing the BVA Chairman's September 20, 1989, decision disapproving of the fee agreement as to representation before VA/BVA. Hence, I proceed to determine whether any fee is properly payable to the attorney for the prior VA/BVA representation.

### E. Validity of Fee Agreement for Representation Before VA/BVA

The Chairman's September 20 letter and the Secretary contend that the fee agreement for representation before VA/BVA was invalid for two reasons: First, they contend that, under VJRA section 401, the effective date of VJRA section 104(a), allowing for the charging of attorney fees in prescribed circumstances, was September 1, 1989. The Chairman concluded: "It thus appears that there was no legal authority for the agreement at the time that it was executed. Fees authorized by Pub.L. 100–687 may not be charged for any services rendered prior to September 1, 1989." R. at 131. Second, the Chairman stated: "The Board and the General Counsel of [VA] construe sections 104 and 403 together to require that the [NOD] filed on or after November 18, 1988, which is necessary to support a fee agreement must be the [NOD] which **precedes** the final Board ... decision [under appeal] in the case. In this case, therefore, fees may be charged only for services rendered after the date of the decision which the Board will shortly promulgate in this case...." R. at 131. As noted earlier, the BVA decision was issued on October 10, 1989.

Attorney Smith asserts that a fee authorized by section 5904, as amended by the VJRA, may be charged to the claimant for representation before VA/BVA rendered prior to September 1, 1989, because a fee could be charged to the claimant for services rendered prior to that date in preparing an appeal to this Court. Br. of Appellant at 21. He also asserts that the VJRA and its legislative history do not require that the post-November 17, 1988, NOD must precede a final BVA decision that is appealable to this Court. *Id.* at 18–19. Both of these contentions are correct.

(1) *Effective date.*—On the first issue, I conclude that section 401 does not apply to the attorney-fee provisions of the Act, but that section 403 alone establishes the effective date for the attorney-fee provisions.

VJRA section 403 is found, along with section 401, in title IV of the VJRA, the title specifying the effective dates for the VJRA. Section 403 provides that "[t]he

---

12. *See E. Farnsworth, Contracts* § 11.3, at 753–4 (1982) (transfer of contract right extinguishes the assignor's (claimant's) right to performance by the obligor (the Secretary) and gives the assignee (the attorney) a right to performance).

amendment to section [5904](c) ... made by section 104(a) shall apply only with respect to services of ... attorneys in cases in which [an NOD] is filed ... on or after [November 18, 1988]." Pub.L. No. 100–687, § 403, 102 Stat. at 4122. Section 401(a), the provision that the Secretary asserts provides the effective date for the section 104(a) attorney-fee amendments, provides that "except as otherwise provided **in this section,** this division [Division A, which is the VJRA] (and the amendments made by this Act) shall take effect on September 1, 1989." Pub.L. No. 100–687, § 401(a), 102 Stat. at 4122 (emphasis added). None of the exceptions to the September 1, 1989, effective date listed thereafter in section 401 pertain to the attorney-fee provisions added by section 104(a). Therefore, the language of section 401(a) would seem, as the Secretary contends, on its face to make section 401(a) applicable to the attorney-fee provisions.

Under that interpretation, both sections 401 and 403 would be applicable to the attorney-fee provisions. However, the legislative history, discussed below, establishes beyond question that the attorney-fee provisions were to be excepted from the September 1, 1989, effective date provided in section 401 and were to become effective **only** as set forth in section 403.

The Supreme Court has stated that "unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington N.R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). But the Supreme Court has also stated that "even the most basic general principles of statutory construction must

yield to clear contrary evidence of legislative intent." *Nat'l R.R. Passenger Corp. v. Passengers Ass'n,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). *Burlington* recognized this proposition in stating: " '[I]n the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive." ' " [13]

The Supreme Court has recently provided an object lesson in rejecting the plain meaning of a statutory provision when the legislative history clearly established a contrary intention on the part of Congress. In *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), the Supreme Court held that a provision of the Hobbs Act governing appeals to the courts of appeals from decisions of the Interstate Commerce Commission (ICC) did not prevent petitions for reconsideration from rendering the ICC order under reconsideration nonfinal despite the fact that "a contrary conclusion [was] admittedly suggested by the language of the Hobbs Act". *Id.* at 284, 107 S.Ct. at 2368. [14]

In our case, we are presented with the exceptional circumstance where facially unambiguous language is not conclusive because unequivocal, repeated, totally consistent, and highly authoritative legislative history provides a clear expression of legislative intent to the contrary. The highly authoritative VJRA Explanatory Statement declares:

> The compromise agreement (section[s] 401, 402, and 403) would establish a general effective date of September 1, 1989, and provide for **exceptions** as follows:
> ....
> Section 104(a), relating to attorneys' fees, would take effect with respect to

---

**13.** 449 U.S. at 430, 101 S.Ct. at 701 (quoting *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986), and *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

**14.** In *West Penn Power Co. v. EPA,* 860 F.2d 581, 587–88 (3d Cir.1988), the Third Circuit twice characterized *Locomotive Engineers* as going

"against the 'plain meaning' of a statute" and referred to the interpretation adopted in *Locomotive Engineers* as "notwithstanding [the statute's] literal meaning". *See also United Transp. Union v. ICC,* 871 F.2d 1114, 1118 (D.C.Cir.1989) (in which the D.C. Circuit quoted *West Penn* to the effect that *Locomotive Engineers* had interpreted the statute "notwithstanding its literal meaning").

cases in which a notice of disagreement with a Regional Office decision is filed on or after the date of enactment.[15]

This bicamerally produced and referenced Explanatory Statement thus states clearly and unequivocally that the attorney-fee provisions were intended to be excepted from the September 1, 1989, effective date set forth in section 401. Further support for this conclusion is found in the statements made by the Senate Committee Chairman and floor manager, Senator Cranston. He stated: "Included in title IV are provisions that would: First, specify that, **except** for the matters described below, the Act would take effect on September 1, 1989". 134 Cong.Rec. S16642 (daily ed. Oct. 18, 1988) (emphasis added). Then, describing the matters which would *not* become effective on September 1, 1989, he stated: "Fifth, make the provisions relating to attorneys' fees applicable to cases in which the [NOD] was filed on or after the date of enactment." *Ibid.*[16]

The uncontradicted legislative history thus clearly expresses the intent of Congress that section 403 serve **instead** of, not **in addition** to, section 401 as the effective date for the attorney-fee provisions.

Added support for this conclusion arises from the logic of the position argued by the appellant's attorney that if the September 1, 1989, effective date were to apply to the VJRA section 104(a) amendments then an attorney would be prohibited from receiving a fee for services performed prior to September 1, 1989, in preparing an appeal to this Court on behalf of an appellant. Such a result would very clearly be at odds with the Congressional intention that claim-

ants appealing a final BVA decision to this Court be able to do so with attorney representation. The NOD provision in VJRA section 403 regarding attorney representation was intended to operate in conjunction with the VJRA section 402 provision allowing review in this Court of only those BVA decisions as to which an NOD was "filed ... on or after the date of the enactment of [the VJRA]." VJRA, Pub.L. No. 100–687, § 402, 102 Stat. at 4122.[17]

(2) *Attorney representation before judicially appealable BVA decision.*—I likewise do not agree with the Chairman and the Secretary that under VJRA section 403 "the [NOD] filed on or after November 18, 1988 ... must precede the final BVA decision [on appeal to this Court]." Br. of Appellee at 22. As noted above, VJRA section 403 provides that "the amendment to section [5904](c) of title 38 ... made by section 104(a) shall apply only with respect to services of ... attorneys in cases in which [an NOD] is filed with [VA] on or after [November 18, 1988]." Pub.L. No. 100–687, § 403, 102 Stat. at 4122. Section 104(a) amended 38 U.S.C. § 5904(c)(1) to provide:

In connection with a proceeding before [VA] with respect to benefits under laws administered by [VA], a fee may not be charged, allowed, or paid for services of ... attorneys with respect to services provided before the date on which the [BVA] first makes a final decision in the case. Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an ... attorney is retained with respect to such

---

**15.** 134 Cong.Rec. S16657–8 (daily ed. Oct. 18, 1988) and 134 Cong.Rec. H10351 (daily ed. Oct. 19, 1988) (emphasis added).

**16.** There was no debate regarding the effective dates during House final consideration of S. 11 the next day, *see* 134 Cong.Rec. H10342–61 (daily ed. Oct. 19, 1988), but the House Committee Chairman and floor manager, Representative G.V. Montgomery, did incorporate into his remarks the Explanatory Statement containing the material quoted above. *Id.* at 10344.

**17.** In explaining the effective date provision in VJRA section 403 and the attorney-fee provi-

sions added in section 104(a), Senator Cranston stated:

The provision in section 104 ... relating to attorney fees ... would be applicable to cases in which a notice of disagreement is filed after the date of the enactment [Nov. 18, 1988]....

This will ensure that those veterans or other claimants who would be able to bring their cases to the new Court under the compromise agreement will be able to do so with the assistance of paid counsel.

134 Cong.Rec. S16650 (daily ed. Oct. 18, 1988).

a case before the end of the one-year period beginning on that date.

Pub.L. No. 100–687, § 104(a), 102 Stat. at 4108. There is nothing in the two above-quoted statutory provisions or their legislative history to lead us to adopt the gloss that the Secretary urges us to place on them.

The language of VJRA section 403 requires that a post-November 17, 1988, NOD have been filed with respect to the claim, not that that NOD precede a final BVA decision appealable to this Court. Unlike the situation as to the effective date, the legislative history as a whole reinforces the plain meaning of the law.

This conclusion flows from several statements by Senator Cranston and his counterpart, Representative G.V. Montgomery, the Chairman of the House Committee on Veterans' Affairs and the floor manager during final consideration of S. 11 by the House.[18] The legislative history demonstrates that Congress intended the VA administrative process to continue to operate after November 17, 1988, without claimant-paid attorney representation, but that once an initial BVA decision was adverse the claimant would be free to pay an attorney to provide representation as to that claim before VA or the BVA, or both. In fact, to conclude otherwise would contravene the very clear Congressional intent that for claims as to which a post-November 17, 1988, NOD was filed a claimant-paid attorney should be able to seek reconsideration or reopening if that would best suit the claimant/client's interests and possibly

---

18. For example, during Senate consideration of the compromise agreement which was enacted as Public Law 100–687, Senator Cranston commented as follows on the revisions of the attorney-fee provisions to be made by the VJRA:

> The compromise agreement before us today prohibits attorneys fees until after the BVA makes its first final decision, thus contemplating that the current practice of veterans being assisted by skilled veterans' service officers throughout the VA and initial BVA administrative processes would continue to operate exactly as it does now.

134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988). In commenting on the attorney-fee provisions, Senator Cranston made three statements that reasonable attorney fees would be permitted after the BVA first makes a final decision in the case and would be permitted in connection with representation regarding subsequent VA/BVA consideration of the claim. *See* 134 Cong.Rec. S16639, S16640, and S16646 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston). Moreover, during House consideration of the legislation, Representative Montgomery commented as follows on the VJRA attorney-fee provisions:

> Attorneys would be prohibited from charging any fee for representation before [VA] or the [BVA] until the initial decision of the Board has been made.... If the BVA disallows an appeal and the veteran then retains an attorney who attempts to have the claim reopened or reconsidered by the BVA, a fee may be charged.

134 Cong.Rec. H10342 (daily ed. Oct. 18, 1988) (statement of Rep. Montgomery). Nowhere did either Senator Cranston or Representative Montgomery even remotely suggest that the claimant could pay an attorney only if an NOD as to a BVA decision **appealable to this Court** was filed on or after the date of VJRA enactment—November 18, 1988.

The Secretary, arguing that the legislative history supports VA's position, states that "Senator Cranston, in a floor statement, indicated that the fee provisions were designed to give a claimant the right to employ an attorney to either reopen the case or to appeal it to the Court of Veterans Appeals." Br. of Appellee at 23. The Secretary then reasons that in order for a claimant to have that judicial review option the post-November 17, 1988, NOD would have to precede the BVA decision in the case; otherwise, the veteran would not have the option to appeal to this Court. This analysis does not wash.

The full statement of Senator Cranston was as follows: "It is important, as this provision [VJRA section 104(a)] would provide, that a veteran, once he or she has received an initial BVA decision **and sought an attorney's assistance to appeal that decision,** would be able to seek further BVA review with the assistance of counsel before going to court." 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (emphasis added). Rather than suggesting that the post-November 17, 1988, NOD which is required for purposes of triggering section 403 must also **in every case** have preceded the "final [BVA] decision in the case" referred to in 38 U.S.C. § 5904(c)(1), the floor manager is providing an **example** of **one** important incident of section 104(a), not an exclusive iteration of its **only** incident. At some point in the future the BVA decision after which paid representation may be retained will, as a result of the natural sequence of events, **always** be preceded by a post-November 17, 1988, NOD. In light of this, Senator Cranston's statement cannot fairly be read as more than a general statement as to what the attorney-fee provisions would provide in the situation where the NOD does precede the final BVA decision.

avoid the time and expense involved in subsequent administrative or judicial appeals.[19]

Under the Secretary's position, a veteran filing an NOD on or after November 18, 1988, in a reopened claim under 38 U.S.C. § 5108 with respect to which the BVA had already made an initial decision would be unable to pay an attorney, retained within one year after the initial BVA decision, for representation in connection with an appeal to the BVA following the filing of the post-November 17, 1988, NOD. The consequence would be that such a veteran would have to wait until the BVA issued a second decision which was preceded by an NOD filed on or after November 18, 1988, before retaining and paying for an attorney. That result would be an unnatural stretching of the language of the VJRA that would not accord with the intent of Congress in enacting it.

As is pointed out in part (1), above, the NOD provisions of sections 403 and 402 are complementary. The purpose of requiring in section 403 a post-November 17, 1988, NOD was to "ensure that those veterans or other claimants who would be able to bring their cases to the new court under the compromise agreement [on S. 11] will be able to do so with the assistance of paid counsel." 134 Cong.Rec. S16650 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston).

The NOD provision in section 403 was thus intended to ensure that veterans would be able **after a certain date** to pay attorneys to assist them in bringing an appeal to the Court or seeking administrative reconsideration or reopening. The legislative history is devoid of any suggestion that this provision was meant to be used as a device to prolong the time period before which claimant-paid counsel could be lawfully retained. Sections 104(a) and 403 of the VJRA, taken together, simply require that no fee be charged to a claimant for an attorney's services before the date on which the BVA first makes a final decision

on the claim in the case, and that a fee be charged only for representation as to claims with respect to which an NOD is filed on or after November 18, 1988.

Hence, under the law, a VA claimant may pay a fee for representation before VA, the BVA, or both, as long as each of the following four conditions are met, as they are on the facts before us as to attorney Smith's VA/BVA representation of the claimant: (1) an initial BVA decision has been made on the claim in question; (2) an NOD on or after November 18, 1988, has been filed as to that claim; (3) the services are rendered as to that claim; and (4) the attorney is retained within one year after the BVA decision in question. This construction of the statute promotes Congress' objectives in enacting the new attorney-fee provisions, including: improvement of the Department record by allowing an attorney to be involved at the Department level after an initial BVA decision; prevention of unnecessary delay in the resolution of claims; promotion of the possibility of resolution at the lowest administrative level and without resort to court; and completion of the **initial** administrative process without claimant-paid attorney representation. *See* 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston).

For the reasons set forth above, the fee agreement for VA/BVA representation was valid under the statute.

F. Full Effect of Attorney Receiving Fee Payment Directly from the Secretary Out of Past–Due Benefits

Since attorney Smith has a valid fee agreement for the pre-judicial-appeal legal services he provided at VA/BVA, it is necessary to determine the effect on his right to fees under that agreement if he accepts payment out of past-due benefits directly from the Secretary. I conclude that the "total" fee limitation applies to any and all representation by a particular attorney on

**19.** *See* 134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston: "Permitting an attorney representing a veteran to seek directly to reopen a BVA decision before the regional office would ... have the further benefit of promoting the probability of a claim being resolved finally before the regional office or the BVA without resort to court action—a result which in many cases would be more advantageous for the veteran in terms of speedy justice and cost of the attorney's time.")

a particular claim, no matter where undertaken. To conclude otherwise would permit an attorney to attempt to circumvent the exclusivity of the option of guaranteed–VA–Secretary payment by entering into separate agreements for VA/BVA representation and Court representation or by providing for retainers for representation before either entity and direct payment by the Secretary in connection with representation before the other entity. Indeed, the parties could seek to get around the statutory scheme by entering into four different fee agreements—for representation before VA, BVA, this Court, and the Federal Circuit—and thereby provide for up to an 80–percent contingent fee directly paid by the Secretary.

The legislative history suggests that such a result was not intended.

To assist claimants, whose resources may be limited but who have good cases, to acquire legal assistance, the compromise agreement would provide that a claimant and an attorney may enter into a contingency agreement pursuant to which the [Secretary] will pay the attorney's fees directly out of past-due ... benefits awarded to the claimant.... **[T]he fee for representation before the VA, the BVA, the CVA, or the Federal Circuit under such an arrangement for payment out of past-due benefits would be limited to 20 percent of the past-due benefits awarded.**

134 Cong.Rec. S16646 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston) (emphasis added). In the context of the entire paragraph quoted above from the Senate debate, "or" in the last sentence before "Federal Circuit" may not reasonably be read as permitting 20 percent of past-due benefits to be paid directly by the Secretary up to four times for representation before the four potential different entities. Permitting such a fee of up to 80 percent

of past-due benefits to be paid directly by the Secretary could hardly be said to be providing a "limited" agreement. The structure of 38 U.S.C. § 5704(d) suggests that it was directed at limiting all such direct-VA-payment fee arrangements between an attorney and a VA claimant for representation (wherever undertaken) in connection with a particular claim.[20] The best evidence of this is the reference in paragraph (3) of that subsection to benefits awarded in proceedings before this Court as well as before the Secretary and the Board.

### IV. CONCLUSION

I am convinced that the conclusions reached above best vindicate the Congressional objectives, discussed earlier, to give a VA claimant and an attorney wide latitude to enter into a fee agreement calling for a fixed fee and/or a contingent fee paid by the claimant, as well as a minimum fixed fee in the event that the contingent fee should turn out to be less than the fixed fee. By not requiring such a fee agreement to be either completely contingent (unless payment is made directly by the Secretary out of past-due benefits) or completely fixed, Congress left VA claimants free to enter into arrangements that will allow them to obtain the most effective representation. Those claimants with limited resources thus may choose to enter into contingent-fee agreements and obtain the protection that their **total** fee for all representation on a particular claim or matter may not exceed 20 percent of past-due benefits if the contingent fee is paid directly by the Secretary. The protection against unreasonable fees that Congress established would still be present since both the BVA (as to representation before VA/BVA) and the Court may, on their own motion or on the motion of a party, review fee agreements and order a reduction in a fee found to be excessive or unreasonable

---

**20.** As to a contingent fee payable directly by the Secretary, paragraphs (1) and (2) of subsection (d) limit to 20 percent "the total fee payable ... on the basis of the claim" and "the amount of the fee payable ... on the basis of the claim", respectively. 38 U.S.C. § 5904(d)(1), (2). In neither paragraph is the fee limitation expressed as a limitation on a fee payable 'under a particular agreement'; rather, the paragraphs are drafted generally in the context of representation on a claim or other matter "that is resolved in a manner favorable to the claimant". 38 U.S.C. § 5904(d)(2)(A), (B).

even though otherwise permissible under the statutory parameters.

For the reasons set forth above, I conclude as follows as to the fee agreements:

(1) The first fee agreement entered into between the attorney and the veteran governs the relationship of the parties as to representation on the present claim before VA/BVA, and the second agreement is a modification of the first agreement and governs as to representation before the Court on the claim in question.

(2) That modified fee agreement provides for types of fees permitted by the statute.

(3) In reviewing, *sua sponte*, the fee agreement for representation before the Court, in view of the substantial question about the conformity of the agreement with the statutory parameters, I conclude as follows as to the modified fee agreement for representation before the Court: (A) The total fee payable by the Secretary to the attorney for all representation, on the underlying claim, in whatever forum, including VA/BVA representation, is limited to 20 percent of the past-due benefits if the attorney is paid the contingent fee directly by the Secretary; in that event, the attorney must return the $1,000 fixed fee apparently already paid by the claimant under the first agreement; or the attorney may elect to forgo any payment by the Secretary and seek payment of the 20–percent contingent fee from the claimant in addition to the $1,000 fixed fee, all in addition to the fee to which the attorney would be entitled under the lawfully valid fee agreement for representation before the VA and BVA. (B) In either event, the attorney is entitled to reimbursement by the claimant for the reasonable expenses incurred by the attorney in undertaking the claimant's representation before whatever forum. (C) This Court may later review the factual reasonableness or excessiveness of the fee to be paid for representation before it or review, if timely appealed here, a lawful decision of the BVA on the fee for representation before VA/BVA.

(4) The first fee agreement is a lawfully valid undertaking as to VA/BVA representation because all four of the prerequisite conditions were met; (A) an initial BVA decision was made on the claim in question; (B) an NOD on or after November 18, 1988, was filed as to that claim; (C) the services were rendered as to that claim; and (D) the attorney was retained within one year after the BVA decision in question.

(5) In the event that no contingent fee is payable for representation before VA/BVA, the attorney may lawfully be paid the $1,000 minimum fee provided for in the first agreement for that representation; if past-due benefits are awarded and if that 20 percent amounts to less than $1000, the attorney would be entitled to collect from the claimant for VA/BVA representation the 20 percent of the past-due benefits plus whatever additional amount is necessary to total $1000, provided that the attorney does not receive any payment from past-due benefits directly from the Secretary on the underlying claim; in the event that 20 percent of the past-due benefits amounts to more than $1000, the Court could, of course, review that 20–percent amount for reasonableness or excessiveness on its own motion or on motion of the Secretary or the veteran.[21]

As to the attorney's June 28 motion for waiver of the $50 filing fee on his purported appeal of the BVA Chairman's fee-agreement decision, in *Nagler v. Derwinski*, U.S.Vet.App. No. 91–942 (order, Aug. 27, 1991), the Court held that "the initial filing fee covered the original appeal as well as the fee dispute arising out of it." Accordingly, the Clerk of the Court should be directed to return the second filing fee to the attorney.

---

**21.** *Cf.* 54 Fed.Reg. 34,352 (1989) (to be codified at 38 C.F.R. § 20.609(f)) (proposed Aug. 18, 1989) (providing that attorney fees in proceedings before the Department and the BVA which total no more than 20 percent of any past-due benefits will be presumed reasonable).