Vincent E. GOGA, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–1585.

United States Court of Veterans Appeals.

May 21, 1993.

Before STEINBERG, Associate Judge. ▮

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

▮ The pro se appellant, World War II veteran Vincent E. Goga, appeals from a September 27, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service-connected disability compensation for migraine headaches, arthritis and synovitis of the knees, gastritis, a ganglion cyst of the right hand, and bilateral Dupuytren's contractures. *Vincent E. Goga,* BVA 90–33228 (Sept. 27, 1990). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. On August 5, 1992, in the interest of judicial economy, the Court entered an order staying further proceedings in this case pending the Court's decision in *Guerrieri v. Brown,* 4 Vet.App. 467 (1993) (then captioned *Guerrieri v. Derwinski*). The opinion in *Guerrieri* having issued, the Court now proceeds to decide the instant appeal. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The Secretary's motion will be granted, and the Board's decision will be affirmed.

## I. Background

The veteran served on active duty with the United States Army from April 1941 to February 1946. R. at 1, 7. He also served subsequently in active-duty-for-training periods in the Army Reserves. R. at 110–12. His physical examination upon enlistment noted that he had experienced periodic, irregular migraine headaches. R. at 4. Ser-

vice medical records (SMRs) showed that he experienced sporadic migraine headaches throughout his active service. R. at 23, 37, 43. In its September 27, 1990, decision, the BVA held that the migraine headaches, which had existed prior to service, were not shown by the record to have been aggravated in service. *Goga*, BVA 90–33228, at 8.

In May 1941, shortly after his induction, the veteran experienced a great deal of pain in his left knee and was hospitalized for treatment of his knee condition from May 1941 until August 1941, except for a brief, three-day return to active duty in mid-May. R. at 10–80. The veteran reported to an Army physician that he had originally injured his left knee, prior to his enlistment, while playing football in 1933. R. at 10. After a number of physicians had explored potential causes of the knee condition, including arthritis, an orthopedist made a final diagnosis of "acute exacerbation of a chronic synovitis". R. at 74. Although a diagnosis of chronic arthritis of undetermined cause appears in the veteran's service medical records regarding his right knee, there is no further evidence in the record of a complaint about his right knee or treatment of the right knee for arthritis during active duty. R. at 52, 80. The veteran's November 1945 separation examination was negative for any continuing disability in either knee. R. at 8–9. The first post-service reference in the record to discomfort in the veteran's knees occurred in 1983. R. at 139–42. The Board concluded that the in-service diagnosis of arthritis in the right knee was an error, and that, thus, a right-knee disability was not incurred or aggravated in service. *Goga*, BVA 90–33228, at 7, 9. With regard to the veteran's left knee, the Board held that the evidence established that the condition had clearly and unmistakably preexisted service, and that the disorder was not aggravated in service. *Goga*, BVA 90–33228, at 7–9.

In January 1943, the veteran was hospitalized for gastritis, hemorrhagic. R. at 81–98. According to the veteran's service medical records, this was the only occurrence of gastritis he experienced during active duty, and the veteran presented no evidence that gastritis occurred after service. The Board held that the gastritis was transitory and, thus, not a chronic disability incurred in or aggravated by service. *Goga*, BVA 90–33228, at 8.

In May 1946, shortly after the veteran's separation from service, a private physician removed a cyst from his right palm. R. at 100, 108. The doctor diagnosed the condition as fibroma (ganglion cyst). R. at 108. In January 1947, the veteran filed a claim for service-connected disability compensation for this cyst, in addition to a dental condition. R. at 99–102. He alleged that he had brought the cyst to the attention of the medical officer conducting his separation physical examination but that the officer had neglected to note that condition on his examination report. R. at 100. After reviewing the evidence submitted in support of the claim, which consisted of the veteran's SMRs, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) denied service connection for the disability. R. at 104.

In his attempt to reopen this claim in July 1988, the veteran submitted private medical records of the initial 1946 surgery as well as medical records of his subsequent treatment for bilateral Dupuytren's contractures ("a condition marked by fibrosis with shortening and thickening of the palmar aponeurosis resulting in flexion contracture of the fingers into the palm of the hand", WEBSTER'S MEDICAL DESK DICTIONARY 195 (1986)). The veteran's bilateral Dupuytren's contractures were clinically diagnosed in 1966. R. at 184. He has had multiple surgeries to correct the recurring condition. R. at 120–36, 149–58, 168, 186–87. Although the veteran submitted both the evidence regarding his ganglion cyst and the evidence regarding his contractures in order to reopen the ganglion cyst claim, it is not clear that the BVA considered, as part of the claim to reopen, the evidence of contractures. Although the BVA held that "the evidence" was not new and material, and declined to reopen the previous decision denying service connection for the ganglion cyst (*Goga*, BVA 90–33228, at 6–8), it reached a separate conclusion with regard to the veteran's bilateral Dupuytren's contractures—that the contractures were not diagnosed until nearly two decades after the

veteran's separation from service and that, therefore, they could not be considered to have been incurred in or aggravated by service. *Goga*, BVA 90–33228, at 6, 8.

## II. Analysis

■ The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C.A. § 7261(a)(4) (West 1991). For the reasons set forth below, the Court holds that the Board's findings of fact in this case have a plausible basis in the record and hence are not subject to reversal as being clearly erroneous.

■ The veteran's SMRs indicate that both the migraine headaches (noted at entry, R. at 4) and the initial injury to his left knee (prior injury recounted by the veteran to his Army treating physician shortly after he entered service (R. at 10), as to which the Board found preexistence demonstrated by clear and convincing evidence) had existed prior to his enlistment. Those records do not reveal, moreover, that either of these conditions increased in severity during the veteran's active service. "Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service." 38 C.F.R. § 3.306(b) (1992). *See* 38 U.S.C.A. §§ 1110, 1131, 1153 (West 1991). "[T]emporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered 'aggravation in service' unless the underlying condition, as contrasted to symptoms, is worsened." *Hunt v. Derwinski*, 1 Vet.App. 292, 297 (1991); 38 C.F.R. § 3.306(a) (1992). The veteran continued to experience, throughout his period of active service, sporadic migraine headaches, but the record does not show that they were of greater severity than they were prior to service. In addition, the reported post-service discomfort in the veteran's left knee, arising decades after separation, does not indicate that the condition increased in severity while he was in service.

■ The BVA's factual findings that the in-service diagnosis of chronic arthritis in the right knee was a mistake and that the episode of gastritis the veteran had experienced did not develop into a chronic disability also are not subject to reversal as being clearly erroneous. "For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word 'Chronic.'" 38 C.F.R. § 3.303(b) (1992). The diagnosis of chronic arthritis in the right knee was unsupported in the SMRs by other clinical evidence of the disease. There also is no evidence that the veteran ever complained of discomfort in the right knee while in service, and the separation physical does not indicate a chronic condition. Further, post-service discomfort in the right knee was not clinically manifested until 1983, 37 years after the veteran's separation from service.

■ With respect to the claimed stomach disorder, there is no additional evidence in the record that, after his 1943 hospitalization, the veteran had experienced further episodes of gastritis either during active service or after separation. The separation physical did not indicate an ongoing disability. Therefore, the Court holds that the Board's denial of service connection for gastritis was not clearly erroneous.

■ The veteran's claim for service connection of his ganglion cyst was denied on April 1, 1947, by an RO decision which became a final decision when the veteran did not appeal it within one year. R. at 104. *See* Veterans Regulation No. 2(A), pt. II, par. III; Veterans' Administration Regulation 1008; effective Jan. 25, 1936, to Dec. 31, 1957. *See also* 38 U.S.C.A. § 7105(b)(1) (West 1991); 38 C.F.R. §§ 20.1103, 20.302(a) (1992). Pursuant to 38 U.S.C.A. § 5108 (West 1991), a previously and finally disallowed claim must be reopened by the Secretary when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and

finally disallowed claims, the BVA must conduct a two-step analysis. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

 In this case, it is unclear whether the Board applied this two-step analysis with respect to the ganglion cyst claim and found the additional evidence not new and material or whether it reopened the claim and denied it on the merits. However, despite the Board's ambiguity, any error was harmless. The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). The Court recently synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra,* . . . must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98, (1993). The Court holds that the veteran has not submitted new and material evidence and that, therefore, the claim was not eligible to be reopened. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet.App. 251, 254 (1991).

In addition, if the BVA failed to evaluate the evidence regarding the veteran's bilateral Dupuytren's contractures as part of his attempt to reopen the ganglion cyst claim, that, too, is harmless error since the Court has considered all of the evidence and holds that the evidence of bilateral Dupuytren's contractures, insofar as it was submitted in the effort to reopen the cyst claim, is not new and material. The evidence regarding the contractures, submitted by the veteran since the prior denial of his claim in 1947, is not cumulative of evidence already in the record, but the additional, post-service medical records submitted, when viewed in conjunction with the SMRs previously considered, do not create a reasonable possibility that the ganglion cyst was service connected. The SMR of the May 1946 surgery does not indicate that the condition arose in active service. Further, the medical records regarding the later-arising bilateral Dupuytren's contractures also do not show that the previously excised ganglion cyst was incurred in service. Accordingly, the Court holds that the BVA was correct in concluding that there was no new and material evidence to justify reopening this claim.

 The veteran also contends that his bilateral Dupuytren's contractures are a subsequent manifestation of his previous ganglion cyst, and that he should be awarded service connection for his contractures in conjunction with service connection for the ganglion cyst, even though the contractures were not clinically manifested until 1966. *See* 38 C.F.R. § 3.303(b) (1992). However, since service connection for the veteran's ganglion cyst has not been established, there is no legal basis for extending service connection to the veteran's subsequently manifested bilateral Dupuytren's contractures. In addition, the evidence submitted regarding this disorder does not establish that the disorder was independently incurred in service apart from the ganglion cyst. The Court holds that the Board's denial of service connection for the contractures was not clearly erroneous.

### III. Conclusion

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court holds that the appellant has not demonstrated that the BVA committed error, in its findings of fact, conclusions of law, procedur-

al processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C.A. §§ 7252, 5107(a), (b), 7104(d)(1), 7261 (West 1991) and the analysis in *Gilbert.* The Secretary's motion for summary affirmance is granted, and the September 27, 1990, BVA decision is affirmed.

AFFIRMED.